58 CCPA

**Application of Carroll Trowbridge KENNEDY.**

**Patent Appeal No. 8381.**

United States Court of Customs and Patent Appeals.

Feb. 11, 1971.

ings through which tufts are sewn in known manner by rows of tufting needles to make "tufted pile fabrics" (such as rugs) in order to reduce rupture of flat plastic threads or yarns making up the primary backings by the tufting needles. In four of the eight claims on appeal the plastic yarns are specified as being made from polypropylene or copolymers of propylene, and in four of the claims the yarns are described as "having a relatively flat cross section" or as "being ribbon like." The reference patent to Rhodes, infra, is referred to in the application as disclosing the backing which gave rise to the problem to the solution of which the present invention is directed. The use of lubricants such as those specified in appellant's claims is concededly old in the rug-making art, but appellant insists that such lubricants have never before been used in the quantity called for by his claims and for the purpose for which he uses them.

Claim 36 is representative:

36. A high strength tufted pile fabric comprising a woven primary backing material, said primary backing woven of yarn of a plastic selected from the group consisting of polypropylene and copolymers of propylene, at least some of said yarn in said primary backing having a relatively flat cross section; said substantially flat yarn being coated with a lubricant in an amount in the range of about 0.2 to 12 percent based on the weight of said yarn, and a plurality of tufts, a substantial number of said tufts penetrating some of said lubricated substantially flat yarn, said penetrated yarn being relatively free of ruptured and shattered areas compared to an unlubricated penetrated yarn in otherwise similar fabric.

## THE REFERENCES

Emil W. Milan, King of Prussia, Pa., Ronald L. Lyons, Bristol, Pa., attorneys of record, for appellant. Fred L. Witherspoon, Jr., Arlington, Va., of counsel.

S. William Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 32, 35–37, and 39–42, all claims remaining in appellant's application serial No. 453,478, filed May 5, 1965, for a high strength tufted pile fabric and process for making it. We modify the board's decision.

## THE INVENTION

The gist of the invention is the use of unusually large amounts of textile lubricants on certain kinds of primary back-

The references are:

| | | |
|---|---|---|
| Schwartz | 2,999,297 | Sept. 12, 1961 |
| Rhodes | 3,110,905 | Nov. 19, 1963 |
| Abramowicz (Italy) | 635,842 | Mar. 9, 1962 |

Rhodes discloses a tufted pile fabric having a primary backing formed of flat,

ribbon-shaped synthetic plastic yarns, including polypropylene yarns. Schwartz discloses a backing for tufted pile fabrics such as rugs consisting of wax-lubricated, round, twisted, paper threads. Abramowicz discloses a sewing-machine attachment for applying lubricant such as paraffin oil to materials such as sheet plastic, oilcloth, coated fabrics, etc., before sewing them. Neither Schwartz nor Abramowicz specifies the precise extent to which their respective materials are lubricated before tufting or sewing, but Schwartz specifies that his paper threads are "coated with a thin layer of wax" which "acts as a lubricant" when the tufting needles enter the backing and Abramowicz discloses that his "fluid dispenser for sewing work" "provides automatically for lubrication" of sheet sewing materials sufficient to prevent "friction between the surface structure * * [of the fabric] and the bottom of the presser foot of standard, simple feeding [sewing] machines."

## THE REJECTION

The examiner reasoned that, since Rhodes discloses the use of the relatively flat backing yarns of polypropylene used by appellant in the primary backing of tufted pile fabrics—which appellant has admitted from the outset—and since Schwartz and Abramowicz disclose that "it is conventional in the art to lubricate the material through which the needle passes before it is sewn or tufted," it would be obvious to one skilled in the art to lubricate Rhodes' backing before tufting. The board agreed, noting that both appellant and Schwartz were concerned with increasing the tensile strength of the backing in tufted fabrics, reasoning that "Since Schwartz discloses forming the backing for tufted fabrics with lubricated threads and Abramowicz discloses applying a lubricant to a sheet of plastic before sewing, * * * it would be obvious to one skilled in the art to lubricate the threads of the backing material in Rhodes before tufting in order to increase the tensile strength of the backing."

The board drew no distinctions based on the differences among the various claims, rejecting all as being unpatentable over Rhodes taken in view of either Schwartz or Abramowicz under 35 U.S. C. § 103.

## THE APPEAL

Appellant argues that the board's decision should be reversed for either of two reasons. First, appellant contends that his tufted pile fabric is *not* simply the combination of Rhodes with either Schwartz or Abramowicz because the use of the *large amount* of lubricant called for by his claim is not suggested by either of the secondary references. Second, appellant contends that the board failed to consider objective evidence of non-obviousness in accordance with Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), which evidence, he contends, establishes the non-obviousness of his invention.

## OPINION

Claim 36, supra, specifies that "at least some" of the yarn used for the primary backing material be coated with a lubricant "in an amount in the range of about 0.2 to 12 percent based on the weight of said yarn." Claim 37 specifies that "at least some" of the yarn used for the primary backing material be coated with a lubricant "in an amount of about 0.6 to 8 percent based on the weight of said yarn." These two ranges are, respectively, appellant's broad and preferred ranges. Other claims do not specify the amount of lubricant to be applied in numerical terms but specify functionally that *enough* lubricant be present on the primary backing before it is tufted so that the finished fabric will meet certain specified strength characteristics or be relatively free of "ruptured or shattered areas." The only rejection before us is based on 35 U.S.C. § 103 and the sole issue as to each claim is whether the invention it defines would have been obvious under that section. In our view, the claims must be separately considered.

The solicitor argues, "the simple fact is that appellant applies the same solution to the problem [minimizing loss in tensile strength in a class of tufted pile fabrics produced by pierce tufting of woven backings] as taught by Schwartz." However, as noted previously, Schwartz and Abramowicz do not specify how much lubrication is to be applied to their fabrics before sewing, implying that the amount of lubrication to be used in practicing their respective inventions would be obvious to the person skilled in the art.

Appellant does not contend that the pre-tufting lubrication of woven backing is, per se, new. In fact, in his affidavit, filed during the prosecution, appellant asserts that lubrication *in conventional amounts* had been routinely applied to backing of the type recited in his claims but that the loss of strength resulting from such conventional tufting had been unacceptably high. His contention is that:

> The quantity of lubricant required and used for achieving the advantages and benefits of the invention * * * is in addition to, and greatly in excess of, any lubricative amount normally present or applied, to pile, warp or fill yarns for the usual lubricating purposes in the previously practiced weaving and tufting operations on known prior art machines.

His brief is replete with expressions such as "an 'excessive' amount of textile lubricant," "an amount which in medical terms aptly could be described as an 'overdose'," and "a *much greater, additional,* amount of lubricant" (emphasis in original). Essentially, it is his argument that this application of an "excessive" amount of lubricant does not act as the usual weaving aid or, at least, not *solely* as a lubricant, that the benefits flowing from his invention are the result of one or more other mechanisms, not fully understood, and that it would not have been obvious to one who knew only that the application of a little lubrication would facilitate tufting that the application of "*a much greater, additional,*

amount of lubrication" would solve the loss-of-strength problem due to rupturing and shattering in using flat, closely-woven, polypropylene yarn backing.

Considering the prior art references, we do not regard the Italian patent to Abramowicz as particularly significant. All it teaches is that fabrics such as oilcloth and sheet plastic materials should be coated with oil when being run through an ordinary sewing machine in order to reduce friction and resulting heat between the material and the presserfoot under which the material is moved and against which it rubs. While this is use of a lubricant on textiles, it has nothing to do with the problems appellant encountered in tufting.

Schwartz is expressly concerned with tufting and rug making but he is not concerned with the problem that arose with the kind of backing used by appellant. Schwartz was concerned with improving on the "conventional" *backings* previously used, among which he mentions only cotton duck and woven jute. What he discloses is an improved open-weave backing made at least in part of lubricated, twisted paper threads. These are produced from narrow strips of paper, tightly twisted to form a fine-gauge thread not exceeding .045 of an inch in diameter, and having a twist in excess of three turns per inch. To enhance the "slippage" characteristics of these round threads he coats the paper or the thread made therefrom with a thin layer of wax. His most significant statement, to our minds, is (emphasis added):

> The presence of the wax coating on the surface of the woven paper fibres acts as a lubricant therefor. Thus when the tufting needles in entering the backing engage the lubricated warp and filler threads, the needles act to *displace* the threads, thereby permitting the ready penetration of the needles into the backing substantially without friction. In this way overheating of the needles is obviated, and *rupture of the threads which would result should displacement or slip be resisted is minimized.*

Clearly, what Schwartz was trying to do with his waxed, hard, round paper threads and his open weave was to avoid altogether the penetration of individual threads or yarns by the needles. Appellant, on the other hand, is concerned with reducing the loss of strength due to shattering yarns *pierced by* the tufting needles.

Rhodes, as stated above, admittedly shows appellant's type of backing. In his specification, appellant has no drawing but he says Rhodes' "recent patent," No. 3,110,905 discloses the "flat woven synthetic plastic backing" he had been trying to use to make tufted fabrics. It is shown in Fig. 1 below taken from Rhodes:

[A3641]

**FIG. 1**

This is in marked contrast to Schwartz' backing as shown below in his Fig. 2:

[A3646]

The warp threads of paper coated with wax are 10 and the weft threads 16 are of synthetic polyamide or nylon, which Schwartz says he may also use. The weft may, however, be paper. The tuft-

ing yarn loops are shown at 13, 14. It will be noted that they are inserted through the interstices between warp and weft threads and that in Rhodes there are no interstices.

The problem appellant encountered when tufting the Rhodes backing was rupturing and shattering of the flat backing yarns by the tufting needles and consequent loss of strength. We do not feel that Schwartz suggests any solution to that problem because his approach, in the use of lubrication, was to create a backing structure in which the tufting needles would push the threads aside and enter the interstices. In the Rhodes type of backing, this is not a significant possibility due to the near nonexistence of interstices and the flat configuration of the yarns. Nevertheless it is apparent that, taking Rhodes and Schwartz together, it was a known expedient to lubricate a backing material used in the making of tufted fabrics.

Appellant bases his argument for unobviousness here, as he did below, on facts brought out in his affidavit. The salient points are: (1) The problem which constituted the background of the invention arose with respect to backings woven, at least in part, from *flat* yarns of *polypropylene* ("PP"); polyethylene flat yarns had previously been used but did not present a problem and neither did large round *polypropylene* monofilament yarns. (2) The problem was that the tufting needles shattered, splintered, or ruptured the flat PP yarns which caused a great loss of strength in the tufted fabric as compared with the strength of the untufted backing along with other problems related to the appearance of the product. (3) There was always some lubrication on the needles because the tufting yarns were lubricated in accordance with standard practice but the problems existed nevertheless. (4) Some eight different attempts to solve the problem were tried by people highly skilled in the art without success. (5) At the end of nearly a year of research it was found that the shattering of flat polypropylene yarns is greatly re-

duced and strength loss largely avoided by applying large amounts of textile lubricants to the backing.

To summarize, the unobvious invention or discovery was that the application of unusually large *amounts* of lubricant to *flat* yarns of *polypropylene* which are *pierced* by the tufting needles largely prevents shattering or rupture of *those* yarns and *preserves the strength* of the backing. We agree with appellant that that invention is not made obvious by the disclosure of the references. We are therefore of the opinion that insofar as the claims point out *that* invention their rejection must be reversed; insofar as they do not, they fail to define an invention which has been shown to be unobvious over the references which suggest, broadly, the lubrication of plastic backings for tufted fabrics. We now turn to the claims.

Four of the claims, 39, 40, 41, and 42, define the material of which the yarns are made only as "synthetic plastic" which is broad enough to include any such material including the polyethylene as to which appellant's own affidavit states, "strength after tufting was not a very significant problem." They fail, therefore, to point out an unobvious invention.

Four of the claims, 32, 35, 36, and 37, specify that the yarn is of a plastic "selected from the group consisting of polypropylene and copolymers of polypropylene." They therefore avoid the criticism we have made of the first group. However, appellant's affidavit emphasizes that his unobvious invention does not exist unless the yarn is flat. He says, "large round polypropylene monofilament fill yarns do not require lubrication for good strength retention after tufting * * *." Of this group only claims 36 and 37 call for the presence of flat yarn in the backing so we must hold that claims 32 and 35 do not point out the unobvious invention.

Claims 36 and 37, in addition to calling for flat polypropylene yarn, also specify the amount of lubrication present on the flat yarn and the penetration of the flat yarn by the tufts. Both claims being directed to high strength tufted pile fabric, they furthermore recite that the finished product has retained a certain strength. Claim 36, reproduced above, expresses this in terms of relative freedom of the penetrated flat yarn from "ruptured and shattered areas compared to an unlubricated penetrated yarn in otherwise similar fabric." Claim 37, in addition to reciting that the penetrated yarn is "relatively" free from ruptured and shattered areas (without saying what it is relative to), specifies "said high strength tufted pile fabric having a fabric strength in the fill direction of at least 50 pounds per linear inch." We therefore conclude that claims 36 and 37 define inventions which have been shown to be unobvious notwithstanding the references.

The decision of the board is *affirmed* as to claims 32, 35, 39, 40, 41, and 42 and is *reversed* as to claims 36 and 37.

Modified.